UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                                     :

FIREMAN'S FUND INSURANCE COMPANY  :
a/s/o Michael Skurnik Wines, Inc.,           :
                                                                                     :           11 Civ. 7862 (JPO)
                                           Plaintiff,      :
                                                                     :      MEMORANDUM AND
                     -against-                  :              ORDER
                                                                     :
AMC USA, INC.,                                             :
                                                                     :
                                          Defendant.   :
-------------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

       Plaintiff Fireman's Fund Insurance Company, as subrogee of Michael Skurnik Wines, Inc. ("MSW"), brings this action against Defendant AMC USA, Inc. ("AMC") for breach of fiduciary duty, fraud, negligence, breach of contract, and account stated in connection with damage to and loss of a shipment of wine from Spain to the United States. AMC moves to dismiss the Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that the first three claims are time-barred under relevant contracts and under the Carriage of Goods by Sea Act, Pub. L. 16 No. 74-521, 49 Stat. 1207 (1936), reprinted in note following 46 U.S.C. § 30701 (previously codified at 46 U.S.C. App. §§ 1301 et seq.) ("COGSA"), and that, once those claims are dismissed, the Court no longer has jurisdiction over the fourth and fifth claims because they do not meet the amount-in-controversy requirement of the diversity jurisdiction statute, 28 U.S.C. § 1332(a)(2). AMC also argues that the fraud claim must be dismissed for failure to meet the heightened pleading requirements for fraud claims set forth in Rule 9(b) of the Federal Rules of Civil Procedure. For the reasons set forth below, AMC's motion to dismiss is denied.

I.  **Background**

    A.  **Facts**

The following facts are drawn from the allegations in the Amended Complaint, which are presumed true for the purpose of this motion, as well as from documents that are incorporated in and integral to the Complaint.

Plaintiff is an insurance company incorporated and with a principal place of business in California.

MSW was, at all times relevant to this case, an importer, distributor and seller of wines, and was the purchaser, owner, and intended consignee of the shipment at issue in the case.

Defendant AMC is a New Jersey corporation with its principal place of business in New York that was "engaged in the business of providing transportation and logistics services, including freight forwarder services, related to the arrangement, organization, and provision of transportation for wine shipments between Spain and the United States." (Amended Complaint, Dkt. No. 15, ("Am. Comp.") ¶ 5.)[1]

In or about October 2009, AMC contracted with MSW to provide freight forwarding services for a shipment of 1,236 cases of Spanish wine purchased by MSW, and insured by Plaintiff. AMC was responsible for arranging and organizing the pick-up of the individual consignments of wine in various quantities from suppliers in Spain, for organizing the road-carriage of the wine to a consolidation facility at or near Barcelona, Spain, and for arranging and organizing the consolidation, storage, and sake-keeping of the individual consignments pending

---

[1] AMC submits a Federal Maritime Commission license to AMC USA, INC. as a Non-Vessel-Operating Common Carrier ("NVOCC"). (Declaration of Barry Jacobs, Dkt. No. 11, ("Jacobs Dec.") Ex. B.) Plaintiff objects to the admissibility of this document, but because the Court concludes that whether or not AMC was licensed as a NVOCC is not relevant to the disposition of this motion, the Court need not determine whether the document is admissible.

the intended ocean transportation to New York scheduled to commence on or about November 10, 2009.

AMC subcontracted these duties to Barnatrans, S.A. ("Barnatrans"), which is believed to be a Spanish freight forwarder and/or forwarding agent. Unbeknownst to MSW, AMC was allegedly indebted to Barnatrans under prior agreements pertaining to unrelated transactions in an amount totaling roughly €300,000.

After arranging for the collection of the 1,236 cases of wine, Barnatrans effected a seizure of the shipment and refused to allow it to be released from a third-party warehouse to the vessel that was to bring the shipment to the United States. AMC allegedly withheld information from MSW regarding this seizure. The seizure of the wine lasted from November 2009 until on or about June 1, 2010. During the seizure, the wine was allegedly held in unsecure and improper storage conditions and was exposed to extremes of temperature.

On June 1, 2010, when an inventory was performed by AMC, it was discovered that 245 cases were missing. The remaining 991 cases were shipped to New York in or about August 2010.

The parties executed bills of lading for the shipment of the 991 cases, which were divided into seven different shipments. These bills of lading are dated July 20, 2010. Each of these bills of lading contained identical terms and conditions, including a "Clause Paramount" that "All carriage under this Bill of Lading to or from the United States shall have effect subject to the provisions of [COGSA]. . . . [and] said law shall govern before the goods are loaded on and after they are discharged from the vessel whether the goods are carried on deck or under deck and throughout the entire time the goods are in the custody of the carrier." (Jacobs Dec. Ex. C at 2.) The bills of lading also set a time bar for lawsuits, providing that the carrier "shall be discharged

from all liability for loss of or damage to goods unless suit is brought within one (1) year after delivery of the goods or the date when the goods should have been delivered." (*Id.*)

After the goods arrived in or about August 2010, a wine expert sampled the wine and concluded that the wines were "compromised" and "unfit for intended sale." (Am. Comp. ¶ 29.) These cases were destroyed or otherwise withheld from distribution.

MSW allegedly sustained total damage in the amount of $187,639.90 based on the fair market value of the wine that was either stolen or destroyed. Of that total, $32,157.82 was due to the missing 245 cases of wine. Plaintiff paid MSW $185,139.80 for its insurance claim arising from the nondelivery, shortage, loss, theft, and damage to the shipment of wines. Plaintiff also allegedly incurred incidental expenses of $8,615.75 for the post-delivery surveying and inspection of the shipment and for other mitigation expenses. Plaintiff thus brings a claim for $193,755.55 as subrogee of MSW.

### B.   Procedural history

This action was initiated on November 3, 2011, and the Complaint was served on AMC on November 4, 2011. (Dkt. Nos. 1, 3.) AMC moved to dismiss the Complaint on December 14, 2011. (Dkt. No. 10.) Subsequently, Plaintiff filed an Amended Complaint. (Dkt. No. 15.) AMC submitted a letter to the Court, pursuant to this Court's Individual Practices in Civil Cases, stating that it would rely on its original motion papers, and thus moved to dismiss the Amended Complaint. (Dkt. No. 21.) Plaintiff opposes the Motion.

## II.   Discussion

### A.   Motion to Dismiss Standard

In order to survive a motion to dismiss pursuant to Federal Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court must accept as true all well-pleaded factual allegations in the complaint, and "draw[ ] all inferences in the plaintiff's favor."  *Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006) (internal quotations omitted).  On the other hand, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555 (noting that a court is "not bound to accept as true a legal conclusion couched as a factual allegation" (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986))).

When determining the sufficiency of a claim under Rule 12(b)(6), the court is normally required to consider only the allegations on the face of the pleading.  However, "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered."  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

### B.    Statute of Limitations

AMC argues that Plaintiff's first three claims are time-barred because they are subject to COGSA and the time bar of the bills of lading, both of which provide that a suit for loss or damage to a shipment must be brought within one year of the date the goods arrived, or the date when the goods should have arrived.  *See* COGSA § 3(6).  (*See also* Jacobs Dec. Ex. C.)

It is well settled that COGSA applies only during "the period from the time when the goods are loaded on to the time when they are discharged from the ship."  *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 557 (2d Cir. 2000) (quoting

COGSA § 1(e) (definition of "carriage of goods")); *see also Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 29 (2004) ("By its terms, COGSA governs bills of lading for the carriage of goods 'from the time when the goods are loaded on to the time when they are discharged from the ship'"). This is the only time during which COGSA applies by its own force, or *ex proprio vigore*. *Hartford Fire Ins.*, 230 F.3d at 557. However, it is equally well settled that parties may extend the application of any provision of the statute beyond this period by contract. *Id.* (citing *Colgate Palmolive Co. v. S/S Dart Canada*, 724 F.2d 313, 315 (2d Cir. 1983) ("Parties may contractually extend COGSA's application beyond its normal parameters. When they do so, however, COGSA does not apply of its own force, but merely as a contractual term.")). *See* COGSA § 7 ("Nothing contained in this chapter shall prevent a carrier or a shipper from entering into any agreement, stipulation, condition, reservation, or exemption as to the responsibility and liability of the carrier or the ship for the loss or damage to or in connection with the custody and care and handling of goods prior to the loading on and subsequent to the discharge from the ship on which the goods are carried by sea.").

Here, AMC points to the bills of lading, which expressly extend the application of COGSA to the period "before the goods are loaded on and after they are discharged from the vessel . . . and throughout the entire time the goods are in the custody of the carrier." (Jacobs Dec. Ex. C. at 2.) AMC argues that since COGSA applies to the entire time that the shipment was in its custody, COGSA's one-year statute of limitations is in effect as to all actions that it committed during that time. Because this action was brought in November 2011—more than one year after the August 2010 arrival of the shipment—AMC argues that the claims are time-barred.

The problem with AMC's argument is that the extension of COGSA's application beyond the period during which the goods are loaded on a ship is a creature of contract. The contract that purports to extend the application of COGSA was entered into on July 20, 2010. The acts complained of in the Complaint—the alleged breach of fiduciary duty and fraud in retaining Barnatrans that resulted in the seizure of the wine from November 2009 to June 1, 2010, and negligence in its efforts to obtain the release of the wine after its seizure—all took place well before then. Indeed, the Complaint is not based upon any acts in connection with the shipment of the 991 bottles covered by the bills of lading. AMC cites no authority for the proposition that a bill of lading can apply retroactively to impose a statute of limitations on acts that took place before the parties entered into the contract for shipment covered by that bill of lading.

Thus, the ordinary statutes of limitations for breach of fiduciary duty, fraud, and negligence apply to this case. Under New York law, a claim alleging breach of fiduciary duty is subject to a three-year statute of limitations if it seeks monetary relief and a six-year statute of limitations period when the claim alleges fraud. *See Cooper v. Parsky*, 140 F.3d 433, 440-41 (2d Cir. 1998). Negligence claims for damage to property are subject to a three-year statute of limitations. N.Y. C.P.L.R. § 214(4). Because these claims were brought well within these limitations periods, the claims are not time-barred.

### B.    Sufficiency of Fraud Claim

AMC also argues that, in the alternative, Plaintiff's second cause of action for fraud must be dismissed for failure to meet the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P.

9(b).  For affirmative misrepresentations the Second Circuit has held that, in order to satisfy this rule, a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Novak v. Kasaks,* 216 F.3d 300, 306 (2d Cir. 2000).  AMC argues that the Complaint does not satisfy this standard, and that it fails to allege any of the elements of common law fraud.

Plaintiff, in effect, asserts a claim for fraudulent concealment.  To satisfy Rule 9(b) for such a claim, a plaintiff must specify in the complaint "(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud."  *Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 664 (S.D.N.Y. 2007) (quoting *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.,* 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000)).  The Complaint alleges that AMC, in contravention of its fiduciary duty to MSW, "willfully" failed to disclose "(a) the indebtedness to Barnatrans; (b) the weakened fiscal condition of AMC and its affiliate AMC S.A.; and (c) the risk that the Shipment could be seized by Barnatrans."  (Am. Comp. ¶ 47.)  The Complaint also sets forth how MSW was misled and what AMC obtained through the fraud, alleging that "[i]f MSW had been informed of these facts, AMC would not have been retained by MSW to provide services for the Shipment."  (Am. Comp. ¶ 48.)  Whether the evidence will support these allegations, of course, remains to be seen.  But the allegations of the Complaint are sufficient to satisfy the requirements of Rule 9(b) for this type of claim.  Accordingly, AMC's motion to dismiss this claim is denied.

### C. AMC's Motion to Dismiss the Fourth and Fifth Claims

Because the Court does not dismiss the first three claims, the Court may also assume supplemental jurisdiction over the fourth and fifth claims. *See* 28 U.S.C. § 1367(a). AMC argues that these claims must be dismissed because the total amount at issue for the fourth and fifth claims is $32,157.82—less than the $75,000 amount-in-controversy threshold for diversity jurisdiction. *See* 28 U.S.C. § 1332(a). But the total amount at issue (including the first three claims) is over $190,000—well in excess of the amount-in-controversy requirement. AMC makes no argument that the fourth and fifth claims for breach of contract and account stated (in connection with the very same dispute over the nondelivery of the wine) are not part of the "same case or controversy" as the first three claims, or that any of the bases for a court to decline supplemental jurisdiction are present. 28 U.S.C. § 1367(a), (c). AMC argues only that once the first three claims are dismissed, Plaintiff can no longer meet the amount-in-controversy requirement. Since the Court declines to dismiss the first three claims, AMC's arguments are inapplicable. Thus, the Court denies AMC's motion to dismiss the fourth and fifth claims.

### III. Conclusion

For the reasons set forth above, AMC's motion to dismiss the Amended Complaint (Dkt. No. 10) is DENIED. The Clerk of Court is directed to terminate the motion at Docket Entry Number 10.

SO ORDERED.

Dated: New York, New York
August 13, 2012

_____
J. PAUL OETKEN
United States District Judge